**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TYRONE SINGLETON, | : | CIVIL NO: 1:13-CV-02711 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Rambo) |
| v. | : | |
| | : | |
| HARRY LUAREL, *et al.,* | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |
| | : | |

**REPORT AND RECOMMENDATIONS**

In this civil action, the *pro se* plaintiff, Tyrone Singleton ("Singleton"), a former detainee at SCI Camp Hill, has sued two employees of the Pennsylvania Department of Corrections ("DOC") and one employee of the Pennsylvania Board of Probation and Parole ("Parole Board") for violations of his civil rights allegedly occurring during his detention there for having violated conditions of parole. Currently pending is the defendants' motion to dismiss to which recommendations follow.

I.    **Background**.

Singleton initiated this lawsuit on November 5, 2013, by filing a complaint along with a motion to proceed *in forma pauperis*, which was granted. *Docs.* 1, 2, & 9. In his complaint, Singleton names the following three defendants who worked at SCI Camp Hill during the period in question: (1) Luarel Harry ("Harry"), the Superintendent; (2) Scott Whalen ("Whalen"), a Unit Manager; and

(3) Lisa Peters ("Peters"), a Parole Supervisor with Parole Board.  Singleton's complaint is construed as suing the defendants in their individual capacities. On January 16, 2015, the defendants waived service, (*Doc.* 12), and, on February 13, 2015, they filed the pending motion, which is ripe for decision.  *Docs.* 13, 14, & 16.

## II.   <u>Legal Standard.</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough,

2

and a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoted case omitted).

In resolving a motion to dismiss, the Court "conduct[s] a two-part analysis." *Fowler, supra*, 578 F.3d at 210. First, the factual elements are separated from the legal elements and the legal conclusions disregarded. *Id.* at 210–11. Second, the Court "determine[s] whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoted case omitted).

While traditionally focused upon the allegations contained in a complaint the Court may also consider exhibits attached to a complaint, matters of public record, and "an undisputedly authentic document" relied upon by the plaintiff and attached as an exhibit to a defendant's motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, in a case such as this, a complaint filed by a *pro se* litigant is to be liberally construed and held to a less stringent standard than formal complaints drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

3

Applying these guiding principles, the allegations set forth in Singleton's complaint are insufficient to state a claim upon which the relief requested can be granted under 42 U.S.C. § 1983. The defendants' motion to dismiss, therefore, should be granted without prejudice to Singleton amending his complaint

## III.   <u>Singleton's Complaint.</u>[1]

Singleton's complaint is far from a model of clarity or specificity. Nevertheless, the following factual allegations are discerned from the complaint for the purposes of adjudicating the motion to dismiss. On December 17, 2012, Singleton reported to "Parole" in Dauphin County and received parole violations for testing positive for THC and pending DUI charges. He attended a preliminary hearing 18 days later and was taken into custody on January 4, 2013.

While in custody, Singleton believed that he was being held in Pennsylvania on an "interstate compact from New York." *Doc.* 1 at 3-4. Singleton, thus, contacted Harry, *via* an inmate request form, on February 5, 2013, and explained his belief to her. *Id.* at 3. After contacting Harry, "hearing examiner Martinez" and Karl Martin, a parole agent, informed Singleton that New York had a 30 day waiting period to "come and retain [him], if not Pennsylvania would have to release [him] back on parole supervision." *Id.* at 4.

---

[1]    Consistent with the Rule 12(b)(6) legal standard, Singleton's properly pleaded allegations will be accepted as true and presented accordingly.

On March 21, 2013, after 90 days had passed since his initial detention on the parole violations, Singleton asked Whalen through a request form to send him a copy of the "Governor's warrant" since New York had not come to retain him. *Id.* at 5. Whalen came to Singleton's cell and informed him that there was no detainer lodged against him and that he did not know why Singleton was being held but that there was nothing he could do about it.

The next day, on March 22, 2013, Singleton contacted "Ms. Leonard," of the Parole Board, and informed her that he was being held at SCI Camp Hill in disciplinary segregation on a detainer from New York, that he needed to make bail on his untried charges, and that, per Whalen, there was no detainer lodged against him.[2] "Ms. Leonard" responded that Singleton was being held on a detainer from New York and that there was nothing she could do for him since New York had to release him.

A couple of months later, on August 12, 2013, Singleton contacted Peters through an inmate request form, explaining that he had written to "Records" seeking a copy of the warrant-detainer and that he was informed by "Records" to contact the Parole Board for the paperwork regarding his confinement. Peters responded that he was being held on new charges as well as for violating his parole

---

[2]     In his brief, Singleton asserts that he was confined at the Cumberland County Prison, not SCI Camp Hill. *Doc.* 16-1 at 6-7. Singleton nevertheless sues individuals who work at SCI Camp Hill; thus, his assertion in his brief makes scant sense.

by testing positive for THC. Peters did not provide Singleton with a copy of the warrant or paperwork for his detention.

In the "Relief" section of his complaint, although not stated specifically, Singleton appears to further claim that he was placed in disciplinary segregation, in the SMU, without notice or an opportunity to be heard. In the SMU, Singleton claims that he was locked up for 23 of 24 hours each day and the lights in the SMU remained turned on around the clock.

Finally, Singleton claims that he has fully exhausted his available administrative remedies regarding his claims. To that end, he attaches to his complaint a grievance form dated February 28, 2013, (*Doc.* 1 at 8 & 9), an Initial Review Response to his grievance from the Corrections Records Supervisor, dated March 18, 2013, denying his grievance (*id.* at 10), a Facility Manager's Appeal Response, dated April 15, 2013, from the Facility Manager upholding the initial response (*id*. at 11), and the Final Appeal Decision from the Chief Grievance Officer, dated August 2, 1013, dismissing the final appeal for Singleton's failure to provide the required documentation for review (*id.* at 12).

Based on these allegations, it is liberally construed that Singleton raises at least one procedural due process claim. Specifically, Singleton appears to claim that he was deprived of certain due process protections when he was not given justifications as to why he was placed in the SMU. Otherwise, as discussed, infra,

it is unclear as to what claim(s) Singleton raises on these factual allegations. For remedies, Singleton seeks declaratory and injunctive relief in addition to compensatory and punitive damages.

## IV.   **Discussion**.

In his complaint, Singleton avers that his claim(s) is (are) brought pursuant to 42 U.S.C. § 1983. *See Doc.* 1 at 1. In pertinent part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). To establish a claim under § 1983, a plaintiff must show that (1) the conduct complained of was committed by persons acting under color of state law and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). The Third Circuit has also explained: "[t]he first step in evaluating a [S]ection 1983 claim is to identify the exact contours of the underlying right said

to have been violated and to [then] determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013)(*en banc*)(internal quotations and quoted case omitted).

Defendants do not dispute that the complaint includes sufficient allegations plausibly suggesting that they are state actors. In moving to dismiss the claim(s) in the complaint, defendants argue that they are moot since Singleton was released from custody shortly after the complaint was filed;[3] thus Singleton no longer presents an ongoing case or controversy. Defendants further press for dismissal pursuant to the favorable-termination rule of *Heck v. Humphrey*[4].

**A.      Requests for Declaratory and Injunctive Relief.**

At the outset, Singleton's requests for declaratory and injunctive relief should be denied as moot. In resolving this issue, the Court recognizes that the adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). "The rule in federal cases is that an actual controversy must be extant at all stages of

---

[3]      On February 24, 2014, Singleton filed a change of address letter identifying his new address in East Elmhurst, New York (*Doc.* 7), and on March 18, 2014, he filed another change of address (*Doc.* 8) identifying an address in York, Pennsylvania. While such documents don't explicitly acknowledge that Singleton was released from custody, it is noted that, in his brief in opposition to defendants' motion to dismiss, Singteton states that on February 14, 2014, he was moved from SCI Camp Hill to Rikers Island in East Elmhurst, New York.

[4]      512 U.S. 477 (1994).

review, not merely at the time the complaint is filed." *Id.* at 459 n. 10 (citations omitted). "Past exposure to illegal conduct is insufficient to sustain a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects." *Rosenberg v. Meese*, 622 F. Supp. 1451, 1462 (S.D.N.Y. 1985 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). Thus, a prisoner's transfer or release from prison moots his claims for injunctive or declaratory relief because he is no longer subject to the conditions he alleges are unconstitutional. *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003); *Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir. 1993).

Singleton is no longer confined at SCI Camp Hill and has so properly informed the Court on February 24, 2014. *Doc.* 7. As such, his claims for injunctive and declaratory relief, relating to his confinement at SCI Camp Hill should be dismissed as moot. *See Anderson v. Showalter*, No. 14-330, 2105 WL 1285957, at *7-*8 (M.D. Pa. March 20, 2015) (dismissing plaintiff's claim for declaratory relief as moot.) Contrary to defendants' contentions, however, Singleton's claims for damages are not mooted by the fact that he is no longer incarcerated at SCI Camp Hill, or in general. *Id.* at *8 (citing *Muslim v. Frame,* 854 F.Supp. 1215, 1222 (E.D. Pa. 1994)).

**B. Singleton's Allegations of a Due Process Violation in Connection with His SMU Confinement Fail to State a Claim.**

The complaint is liberally construed as including a procedural due process claim relating to his confinement in the SMU while detained at SCI Camp Hill.  In his brief in opposition to the motion to dismiss, Singleton also argues that defendants denied him with procedural due process protections in connection with his confinement in the SMU at SCI Camp Hill.  *Doc.* 16-1 at 2-4.

The Fourteenth Amendment, in part, provides that a state shall not "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. Amend. XIV.  A due process claim requires a two-part analysis.  First, a court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause.  *Shoats v. Horn,* 213 F.3d 140, 143 (3d Cir. 2000).  Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it."  *Id.*

In *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court, addressing the question of when the state can create liberty interests protected by the Due Process Clause, held that:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of

> its own force, nonetheless imposes atypical and significant
> hardship on the inmate in relation to the ordinary incidents of
> prison life.

*Id.* at 483–84.

In *Sandin,* the inmate was sentenced to 30 days of disciplinary confinement in the Special Holding Unit.  As a result of the inmate's disciplinary segregation he "had to spend his entire time alone in his cell (with the exception of 50 minutes each day on average for brief exercise and shower periods, during which he nonetheless remained isolated from other inmates and was constrained by leg irons and waist chains)."  *Id.* at 494 (Breyer, J., dissenting).  The Court concluded that the inmate's 30 days in the Special Holding Unit, considered within the context of prison confinement, did not impose the type of atypical and significant deprivation of liberty in which the state could be seen to have created a liberty interest.  *Id.* at 486.  The Court noted that disciplinary confinement at the prison in question, with only insignificant exceptions, mirrored conditions imposed on inmates in administrative and protective custody; that based on a comparison of inmates inside of and outside of disciplinary segregation, placement in segregation for 30 days did not work a major disruption in the inmate's environment; that disciplinary action did not inevitably affect the duration of the inmate's sentence; and that the "regime to which [the inmate] was subjected was within the range of confinement

to be normally expected for one serving an indeterminate term of 30 years to life."
*Id.* at 486–87.

"After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin,* 545 U.S. 209, 223 (2005) (quoting *Sandin,* 515 U.S. at 484). In deciding whether a protected liberty interest exists under *Sandin,* we consider the duration of the confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn,* 318 F.3d 523, 532 (3d Cir. 2003). Whether a protected liberty interest exists under *Sandin* requires inquiry into the specific facts of the case, *id.* at 533, but, "inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Burns v. Pennsylvania Dept. of Corrections,* 642 F.3d 163, 171 (3d Cir. 2011).

Here, Singleton alludes to his confinement in the SMU as being unlawful because he was not provided with a disciplinary "write-up" and/or any legal paperwork. Singleton, however, does not allege any facts in his complaint regarding the length of time he spent in the SMU. *See Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (holding that seven months of disciplinary

confinement was not an atypical and significant hardship); *see also, Williams v. Bitner*, 307 F. App'x 609, 610-11 (3d Cir. 2009) (holding that a sanction of 90 days in disciplinary custody was insufficient to trigger a due process violation); *Alford v. Laquise*, 604 F. App'x 93, 94 (3d Cir. 2015). Although in his brief he asserts that he was confined in disciplinary segregation from January 7, 2013, until February 14, 2014, when he was moved to Rikers Island, such facts cannot be considered because attempting to amend the complaint in this manner is procedurally improper and "it is axiomatic that the complaint may not be amended by the briefs in opposition to a [motion]." *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal quotations and citation omitted). Thus, Singleton's due process claim relating to his confinement in the SMU should be dismissed without prejudice.

### C. Insufficient Allegations to State Any Remaining Claims.

Despite liberally construing Singleton's allegations, as is required, it is unclear as to whether, and to what extent, Singleton is raising any further claims in his complaint. The defendants posit that he is further complaining that his parole revocation violated the Interstate Agreement on Detainers Act ("IADA"), 42 Pa.C.S.A §§ 9101-08, and that such claim is barred by the favorable-termination rule announced in *Heck v. Humphrey*. Their position, however, appears to be based on their subjective knowledge of factual events, i.e. parole revocation, which

13

are not stated in the compliant.  Further, in his brief in opposition to the motion to dismiss, Singleton also mentions that he was denied access to the courts and that his failure to have any hearings regarding his confinement violated the Uniform Criminal Extradition Act, codified at 42 Pa.C.S.A. §§ 9121-34.  Such assertions, though, are not included in his complaint.  Finally, our own research reveals that Singleton pleaded guilty to DUI-related offenses on January 7, 2014, was represented by counsel in such proceedings and filed at least one state petition for a writ of habeas corpus that was denied.[5]  As we read the complaint, he was confined at SCI Camp Hill while those charges were pending.  Given all of this, the contours of any other claims for relief asserted by Singleton are presently clouded. Nevertheless, in light of his *pro se* status, it is recommended that Singleton be given a chance to amend his compliant to include the necessary allegations pertaining to any further claims he wishes to raise.

---

[5]     We take judicial notice of the criminal docket sheets in *Commonwealth v. Singleton*, No. CP-21-CR-0003530-2012, available through Pennsylvania's Unified Judicial Docket System docket research at: http://ujsportal.pacourts.us/.

V.     **Recommendations.**

For the foregoing reasons, **IT IS RECOMMENDED** that:

(1) The defendants' motion (*Doc.* 13) to dismiss be **GRANTED** to the

limited extent that Singleton fails to state a due process claim for his

confinement in the SMU at SCI Camp Hill; and

(2) Singleton be given leave to amend his complaint.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen  (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **29th** day of **July, 2015**.

_**S/ Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge