UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE SINGLETON, | : | CIVIL NO: 1:13-CV-02711 |
| | : | |
| Plaintiff | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| LAUREL HARRY, *et al.,* | : | |
| | : | |
| Defendants | : | |
| | : | |

## REPORT AND RECOMMENDATION

### I.  Introduction.

The plaintiff, Tyrone Singleton, brings claims under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution based on his confinement at the State Correctional Institution at Camp Hill (SCI-Camp Hill). The defendants filed a motion to dismiss Singleton's amended complaint.  For the following reasons, it is recommended that that motion be granted in part and denied in part.

## II.  Background and Procedural History.

Singleton began this lawsuit by filing a complaint naming three defendants who worked at SCI- Camp Hill[1] during the period in question: (1) Laurel Harry, the Superintendent; (2) Scott Whalen, a unit manager; and (3) Lisa Peters, a parole supervisor with the Pennsylvania Board of Probation and Parole (the Board). Adopting a report and recommendation from the undersigned, the Court granted the defendants' motion to dismiss the complaint and granted Singleton leave to file an amended complaint.  Singleton filed an amended complaint, and the case was then referred back to the undersigned.

Singleton names the same three defendants in his amended complaint as he named in his complaint:  Harry, Whalen, and Peters.  His claims are based on his confinement at SCI-Camp Hill from January of 2013 until February of 2014.[2]

Singleton alleges in his amended complaint that, on December 17, 2012, he

---

[1] Singleton actually refers to the "Cumberland County State Prison." *See Doc. 19* at 2.  Given that he alleges that he was a prisoner of the Pennsylvania Department of Corrections and he sued individuals who work at SCI-Camp Hill, his references to "Cumberland County State Prison" are construed as references to SCI-Camp Hill.

[2] Although not alleged in his amended complaint, Singleton states in his brief in opposition to the motion to dismiss that he was moved to Rikers Island, New York on February 14, 2014. *See Doc. 23* at 1.  This is consistent with a change-of-address letter that Singleton filed on February 24, 2014, identifying his new address as an address in East Elmhurst, New York. *See Doc. 7.*  It is noted that, on March 18, 2014, Singleton filed another change of address identifying an address in York, Pennsylvania. *See Doc. 8.*

2

reported to parole authorities in Dauphin County and was charged with violating his New York parole by testing positive for THC and because he had pending DUI charges. On January 4, 2013, he attended a preliminary parole revocation hearing. The hearing examiner and his parole agent told him that New York had a 30-day "waiting period to come and retain" him, and that if New York did not take custody of him within that period, Pennsylvania would have to release him back on parole supervision.

On February 5, 2013, Singleton contacted Harry *via* an inmate request form, explained his situation, and informed her that he was at SCI-Camp Hill on an interstate parole violation from New York. After time passed and New York had not taken custody of him, Singleton, on March 21, 2013, informed Whalen of his situation and requested that Whalen send him a copy of the "Governor's warrant" that was causing him to be confined. Whalen went to Singleton's cell and told him that there were no detainers lodged against him, that he did not know why Singleton was being held, and that there was nothing he could do for him.

The next day, Singleton contacted Ms. Leonard with the Board and informed her that he was being held at SCI-Camp Hill in disciplinary segregation on a detainer from New York and that after checking the computer, Whalen had told him that there were no detainers lodged against him. He alleges that he also told Leonard both that he needed to make bail on his untried charges and that he was

"out on bail" on his untried charges.  He asked Leonard to explain why he was still being confined, and Leonard responded that there was nothing she could do and that New York would have to release him.

Several months later, on August 12, 2013, Singleton contacted Peters.  He explained to her that he had contacted "Records" seeking a copy of the warrant-detainer and that "Records" responded by telling him to contact the Board about any paperwork regarding his confinement.  Peters responded to Singleton by telling him that he was being held on new charges and for violating his parole by testing positive for THC.  Peters did not provide a copy of the warrant-detainer or any paperwork regarding his continued detention.

Singleton claims that Harry, Whalen, and Peters violated the Fifth Amendment and the Eighth Amendment, as applied to the states through the Fourteenth Amendment, by allowing him to remain in "solitary confinement for 402 days, 23 to 24 hours a day with 24 hours lighting in the cell" even though he had not violated any prison rules and he was not disruptive.  *Doc. 19* at ¶¶ 15-17.  Construing the amended complaint liberally, Singleton also claims that Whalen and Peters violated his rights by continuing his detention without providing a hearing even though there was no detainer holding him in confinement.  He asserts that the defendants' actions caused him pain, suffering, and emotional distress.  He

seeks compensatory and punitive damages as well as a declaration that the defendants violated his rights.

The defendants filed a motion to dismiss the amended complaint and a brief in support of that motion.  Singleton filed a brief in opposition to the motion.  The defendants have not filed a reply brief.  For the following reasons, it is recommended that the motion to dismiss be granted in part and denied in part.  More specifically, it is recommended that Singleton's claims based on being confined in solitary confinement be dismissed, but because the record is not clear about whether Singleton's parole was revoked, it is recommended that his claim based on being confined without a final parole-revocation hearing not be dismissed at this time on the basis of the favorable-termination rule.

## III.  Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, "only the complaint, exhibits attached to the complaint,

matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents" are considered. *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint must be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). But a

6

court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege

7

sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).  Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

## IV.  Discussion.

The defendants contend that Singleton's claims that he was confined without lawful authority are barred by the favorable-termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).  They also contend that Singleton fails to state either an Eighth Amendment or a due process claim upon which relief can be granted based on being held in solitary confinement.

### A.  At This Stage of the Case It Cannot Be Determined Whether the Favorable-Termination Rule Bars Singleton's Claim for Unlawful Detention Without a Final Parole-Revocation Hearing.

As set forth above, the amended complaint is construed as claiming that Whalen and Peters violated Singleton's rights by continuing his detention without arranging for a final parole-revocation hearing even though there was no detainer

holding him in confinement.  It is this claim that the defendants contend is barred by the favorable-termination rule of *Heck*.[3]

In *Heck,* the United States Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such [a] determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 486-87, 490 (footnote omitted).  "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*

The rationale of the Court in *Heck* was based, in part, on a desire to avoid parallel litigation over the issues of probable cause and guilt, to prevent the

---

[3]  "[T]he favorable termination rule does not apply to claims that implicate only the conditions, and not the fact or duration, of a prisoner's incarceration." *Torres v. Fauver*, 292 F.3d 141, 143 (3d Cir. 2002).  Singleton's claims about being confined in solitary confinement, as opposed to general population or another housing unit, implicate only the conditions of his confinement and are not subject to the favorable-termination rule of *Heck*.  Those claims are addressed in the next sections of this Report and Recommendation.

creation of two conflicting resolutions arising out of the same transaction, and to preclude a convicted criminal defendant from collaterally attacking a conviction through a civil suit. *Royal v. Durison,* 254 F. App'x 163, 165 (3d Cir. 2007).  Even if the plaintiff has exhausted available state remedies, his § 1983 cause of action is deferred unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. *Heck,* 512 U.S. at 489.  "[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration." *Wilkinson v. Dotson,* 544 U.S. 74, 81-82 (2005).

The favorable-termination rule of *Heck* applies in the parole-revocation context. *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (holding that Williams's claims that he was falsely incarcerated for parole violations were barred by *Heck* because success on Williams's claims would necessarily demonstrate the invalidity of the Parole Board's decision revoking his parole, which decision had not been declared invalid).  But not all claims relating to the parole-revocation process are subject to the favorable-termination rule. *See Spencer v. Kemna*, 523 U.S. 1, 17 (1998) ("If, for example, petitioner were to seek damages 'for using the

wrong procedures, not for reaching the wrong result,' and if that procedural defect

did not 'necessarily imply the invalidity of' the revocation, then *Heck* would have

no application all." (citations omitted)).  The question is whether "success on [the]

§ 1983 action would 'necessarily demonstrate' the invalidity of the Parole Board's

decision to revoke . . . parole, which would in turn render [the] § 1983 action

uncognizable under *Heck*." *Williams*, 453 F.3d at 177.

If Singleton's parole was revoked and if that revocation has not been set

aside or declared invalid, then Singleton's claims that he was denied a timely, final

revocation hearing[4] would be barred by *Heck*. *See Butler v. Pennsylvania Bd. of*

---

[4]  In *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972), the Supreme Court set forth
what due process requires in the parole-revocation context.  It recognized "two
important stages in the typical process of parole revocation": "The first stage
occurs when the parolee is arrested and detained, usually at the direction of his
parole officer.  The second occurs when parole is formally revoked." *Id*. at 485.  At
the first stage, the parolee is entitled to a "preliminary hearing" to determine
whether there is probable cause or reasonable grounds to believe that he committed
acts that would constitute a violation of his parole conditions. *Id*.  At the second
stage:

> There must also be an opportunity for a hearing, if it is desired
> by the parolee, prior to the final decision on revocation by the
> parole authority.  This hearing must be the basis for more than
> determining probable cause; it must lead to a final evaluation of
> any contested relevant facts and consideration of whether the
> facts as determined warrant revocation.  The parolee must have
> an opportunity to be heard and to show, if he can, that he did
> not violate the conditions, or, if he did, that circumstances in
> mitigation suggest that the violation does not warrant
> revocation.  The revocation hearing must be tendered within a
> reasonable time after the parolee is taken into custody.  A lapse

*Prob. & Parole*, 613 F. App'x 119, 123-124  (3d Cir. 2015) (holding that Butler's

claim challenging the timeliness of his parole-revocation hearing was barred by

*Heck* because "if, as Butler has argued, the Board lost all legal authority to revoke

his parole after the 120–day deadline imposed by 37 Pa.Code § 71.4(1), the

custody imposed by the Board must be invalid"; but noting that Butler's claim that

he received insufficient notice of the hearing might not necessarily invalidate the

parole-revocation sentence imposed and, thus, may not be barred by *Heck* and

dismissing that claim on other grounds); *McKinney v. Pennsylvania Bd. of Prob. &*

*Parole*, 405 F. App'x 646, 647 (3d Cir. 2010) (holding that McKinney's claims

that he had been imprisoned beyond the maximum terms of his sentences for state

convictions and parole violations and that the defendants violated his rights by

incorrectly calculating his maximum sentence and by failing to conduct a parole

revocation or parole hearing when they revoked his parole and continued to detain

him were barred by *Heck* "because success on his claims would necessarily imply

the invalidity of the fact and the duration of his state confinement, which have not

---

of two months, as respondents suggest occurs in some cases,
would not appear to be unreasonable.
*Id.* at 487–88.  Although a parolee is entitled to a timely revocation hearing after he
is taken into custody on a parole warrant, *see id*., a parolee is not entitled to a
parole revocation hearing until after the warrant is executed. *Moody v. Daggett*,
429 U.S. 78 (1976) (holding that the issuance of a parole violator warrant does not
deprive a parolee of any constitutionally protected rights and there is no
constitutional duty to provide a parole revocation hearing until after the warrant is
executed).

been elsewhere invalidated"); *Connolly v. Arroyo*, 293 F. App'x 175, 177–78 (3d

Cir. 2008) (holding that Connolly's claims relating to the parole-revocation

process, including a claim that he was denied a timely revocation hearing, were

barred by *Heck*); *Hess v. Chronister*, 247 F. App'x 377, 380 (3d Cir. 2007)

(concluding that Hess's claims that the defendants conspired to violate his rights

by holding him on a detainer without notifying him of the charges against him or

holding a parole-revocation hearing were barred by *Heck* because success on

Hess's claims would necessarily imply that his confinement was invalid); *Worthy*

*v. N.J. State Parole Board*, 184 F. App'x 262, 264 & 266 (3d Cir. 2006) (affirming

dismissal on the basis of *Heck* of claims arising from parole revocation

proceedings for damages and declaratory relief including a claim that the

defendants did not hold a final revocation hearing).

Here, however, the record does not show whether Singleton's parole was

ever revoked.  In his amended complaint, Singleton does not allege that his parole

was revoked, and the defendants have not pointed to any records of which the

Court can take judicial notice that Singleton's parole was revoked.[5]  All that is

_____

[5]  In the Report and Recommendation addressing the motion to dismiss the original
complaint, it was noted that Singleton had pleaded guilty to DUI-related offenses
on January 7, 2014, that he was represented by counsel in such proceedings, and
that he filed at least one unsuccessful state petition for a writ of habeas corpus. *See
Doc. 17* at 14.  It was further noted that the Court can take judicial notice of the
criminal docket in that DUI case. *Id*. at 14 n.5.  The docket from the DUI case does
not, however, shed light on whether Singleton's New York parole was revoked.

known is that Singleton was moved to Rikers Island, New York on February 14, 2014, and that he apparently was, at some point within a short time later, released from custody[6] because Singleton filed another change of address identifying an address in York, Pennsylvania. *See n.2.* From the record in this case, it is not known whether Singleton's parole was revoked. Given this uncertainty, it would be premature to conclude that Singleton's claim based the defendants not arranging for a final revocation hearing are barred by *Heck. See French v. Adams Cty. Det. Ctr.,* 379 F.3d 1158, 1160 (10th Cir. 2004) (holding that district court erred in applying *Heck* where the record did not indicate whether parole was ever revoked on the ground that led to the incarceration in question and where nothing in the record suggested that a damages claim would be inconsistent with a proper parole revocation); *Coffelt v. Baker*, No. ED CV 13-0568 RGK AS, 2013 WL 5964592, at *4 (C.D. Cal. Nov. 7, 2013) (refusing to apply the favorable-termination rule to a claim that the defendant arbitrarily deprived the plaintiff of due process by maintaining a parole hold against him that kept him in jail for eight days because

---

[6] If the favorable-termination rule of *Heck* is applicable, "the fact that [the plaintiff] was released during the pendency of the litigation does not preclude the application of *Heck,* which applies even where habeas relief is no longer available because the individual is no longer in custody." *Connolly v. Arroyo*, 293 F. App'x 175, 178 (3d Cir. 2008); *see also Williams*, 453 F.3d at 179 (reiterating "that § 1983 suits that would otherwise be barred by *Heck* are not cognizable merely because habeas relief is no longer available to the plaintiff").

the court lacked "the factual predicate to apply *Heck*" where the plaintiff alleged that he did not know why he was released from parole custody and the defendant failed to explain the basis for the plaintiff's release).  And as the defendants have not argued any other basis for dismissal of that claim, it is recommended that that claim not be dismissed at this time.

### B.  The Amended Complaint Fails to State an Eighth Amendment Claim Upon Which Relief Can Be Granted Based on Singleton's Solitary Confinement.

Singleton presents an Eighth Amendment Claim Based on his solitary confinement.  The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, *Estelle v. Gamble*, 429 U.S. 97, 101 (1976), prohibits unnecessary and wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Unnecessary and wanton inflictions of pain include those that are totally without penological justification. *Hope v. Pelzer*, 536 U.S. 730, 737 (2002). Conditions that inflict needless suffering, whether physical or mental, may constitute cruel and unusual punishment. *Tillery v. Owens*, 719 F.Supp. 1256, 1275 (W.D. Pa. 1989), *aff'd*, 907 F.2d 418 (3d Cir. 1990).

An Eighth Amendment claim gives rise to a two-prong analysis; such a claim has both an objective component (the deprivation must be sufficiently serious) and a subjective component (the defendant must have been deliberately indifferent). *Young v. Quinlan*, 960 F.2d 351, 359-60 (3d Cir. 1992).  As to the

objective component, the Eighth Amendment is violated only when an inmate is deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[O]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *Tsosie v. Dunbar*, 3:CV-10-2104, 2012 WL 1191642, at *8 (M.D. Pa. Apr. 10, 2012), *aff'd,* 504 F.App'x 75 (3d Cir. 2012). The Constitution does not mandate comfortable prisons, *Wilson,* 501 U.S. at 298, and conditions which are not cruel and unusual are not unconstitutional. *Rhodes,* 452 U.S. at 347. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

As to the subjective component, the question is whether the prison official acted with deliberate indifference to the inmate's health or safety. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

The amended complaint fails to state an Eighth Amendment claim upon which relief can be granted based on Singleton's solitary confinement.  "[S]olitary confinement is not per se violative of the Eighth Amendment." *Dixon v. Larson*, No. 3:15-CV-00425, 2016 WL 749234, at *5 (M.D. Pa. Feb. 23, 2016). *See also Green v. Coleman*, 575 F. App'x 44, 47 (3d Cir. 2014) (affirming dismissal of Eighth Amendment claim of prisoner who alleged that he had been in solitary confinement since October 2009, and that it was causing him psychological distress but who did not allege he was deprived of basic needs).  And Singleton has not alleged facts from which it can reasonably be inferred that his confinement violated the Eighth Amendment.

While Singleton alleges that he was confined in solitary confinement for 402 days, absent allegations that he was denied basic human needs, administrative confinement for that period of time is not sufficient in and of itself to violate the Eighth Amendment. *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (administrative segregation for fifteen months found not to violated the Eighth Amendment).

Singleton does allege that he was subject to 24-hour lighting.  "Requiring inmates to live in constant illumination, under certain circumstances, may rise to the level of an Eighth Amendment violation." *Brown v. Martinez,* 3:CV-03-2392, 2007 WL 2225842 at *8 (M.D. Pa. July 31, 2007) (citing *Bacon v. Miner,* 229 F.

App'x. 96 (3d Cir. April 19, 2007)).  "Courts have held that causing inmates to suffer physical and psychological harm by living in constant illumination is without penological justification." *Sims v. Piazza*, 462 F. App'x 228, 232 (3d Cir. 2012) (citing *Keenan v. Hall,* 83 F.3d 1083, 1090–91 (9th Cir. 1996) (considering a claim from a prisoner who suffered grave sleeping and other problems because of large fluorescent lights directly in front of and behind his cell that constantly illuminated his cell 24 hours a day in such a way that he could not distinguish day from night)).  But "courts also have concluded that security lights that are similar to night lights and that provide only enough light for officers to conduct nighttime security checks do not impinge on a prisoner's constitutional rights." *Sims v. Piazza,* 462 F. App'x 228, 232 (3d Cir. 2012).  "Continuous lighting has been held to be permissible and reasonable in the face of legitimate penological justifications, like the need for security and the need to monitor prisoners." *Id.*

Here, Singleton does not allege that the lighting was more than security lights, and he has not alleged that the lighting caused him medical or psychological problems.  Moreover, he does not allege facts from which it can reasonably be inferred that the defendants were aware that the lights were causing him a substantial risk of serious harm.  Thus, he does not plead facts from which it can be inferred that the defendants were deliberately indifferent.  Thus, the amended

18

complaint fails to state an Eighth Amendment claim upon which relief can be granted.

### C.  The Amended Complaint Fails to State a Due Process Claim Upon Which Relief Can Be Granted Based on Singleton's Solitary Confinement.

Singleton presents a due process claim based on his solitary confinement. He mentions both the Fifth Amendment and the Fourteenth Amendment.  The Due Process Clause of the Fifth Amendment, however, applies only to the federal government and federal officials. *Shoemaker v. City of Lock Haven*, 906 F. Supp. 230, 238 (M.D. Pa. 1995).  "It does not apply to the acts or conduct of the states, their agencies, subdivisions, or employees." *Id.*  The Fifth Amendment is not applicable in this case because the defendants here are state, not federal, actors. Thus, Singleton's due process claim is addressed under the Fourteenth Amendment.

The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend XIV, §1.  "The core concept of due process is protection against arbitrary government action," and due process has "both substantive and procedural components." *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011). Here, Singleton is complaining about being confined without a hearing  Thus, the discussion is limited to procedural due process.

"The requirement that the government afford due process of law to the entities and individuals with whom it deals applies only in situations in which the governmental action implicates some protected life, liberty, or property interest of the entity or individual." *Fantone v. Latini*, 780 F.3d 184, 188 (3d Cir. 2015). Thus, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). If the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

Because neither life nor property are issue in this case, the question is whether Singleton had a due process liberty interest. "[L]iberty interests "may arise from two sources—the Due Process Clause itself and the laws of the States." *Fantone*, 780 F.3d at 188 (3d Cir. 2015) (quoting *Hewitt v. Helms,* 459 U.S. 460, 466 (1983)). The former is characterized "as an 'independent due process liberty interest' and the latter as a 'state-created liberty interest.'" *Powell v. Weiss*, 757 F.3d 338, 341 (3d Cir. 2014) (quoting *Renchenski v. Williams,* 622 F.3d 315, 325 (3d Cir. 2010)).

## 1.  Independent Due Process Liberty Interest.

The Supreme Court has rejected "the notion that *any* grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause." *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (emphasis in original).  Rather, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).  An independent liberty interest arises only "when severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing." *Renchenski v. Williams*, 622 F.3d 315, 325, 328 (3d Cir. 2010).  Such "[s]evere changes in conditions of confinement include, for example, forced administration of antipsychotic medication, *Washington v. Harper,* 494 U.S. 210, 221–222, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), or involuntary transfer to a mental hospital, *Vitek v. Jones,* 445 U.S. 480, 492, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), or, for a prisoner not convicted of a sex offense, forced participation in sex-offender therapy, *Renchenski,* 622 F.3d at 326." *Evans*, 645 F.3d at 665 (3d Cir. 2011).

Here, Singleton's confinement is not "of a magnitude comparable to the aforementioned examples." *Id*.  Unlike the forced administration of psychotropic drugs at issue in *Washington,* confinement in a mental institution at issue in *Vitek*, or forced participation of a prisoner not convicted of a sex offense to sex-offender therapy at issue in *Renchenski*, Singleton's confinement "is 'within the normal limits or range of custody which the conviction has authorized the State to impose." *Olim v. Wakinekona*, 461 U.S. 238, 247 (1983) (quoting *Meachum v. Fano*, 427 U.S. 215, 225 (1976)).  Further, it is "well-settled . . . that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment." *Booze v. Wetzel*, No. 1:CV-13-CV-2139, 2015 WL 5173937, at *13 (M.D. Pa. Sept. 2, 2015) (adopting Report and Recommendation of Magistrate Judge, which contains the quoted material).  Thus, Singleton does not have an independent due process liberty interest in being housed in general population, rather than a segregated or restricted housing unit.

### 2.  State-Created Liberty Interest.

Nor does Singleton have a state-created liberty interest in not being housed in a segregated or restricted housing unit.  State-created liberty interests are "limited to freedom from restraint which, while not exceeding the sentence in such

an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 483-484 (1995). "After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin,* 545 U.S. 209, 223 (2005) (quoting *Sandin,* 515 U.S. at 484). In deciding whether a protected liberty interest exists under *Sandin,* "we do not compare the prisoner's own life before and after the deprivation." *Powell*, 757 F.3d at 344. "Rather, '[t]he baseline for determining what is 'atypical and significant'—the 'ordinary incidents of prison life'—is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law.''' *Id*. (quoting *Asquith v. Dep't of Corr.*, 186 F.3d 407, 412 (3d Cir. 1999)).

Singlton has not alleged facts from which it can reasonably be inferred that he was subjected to atypical and significant hardships in relation to the ordinary incidents of prison life such that he had a liberty interest protected by the Due Process Clause. Although an unduly lengthy period in administrative confinement may amount to an atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life, Singleton, who alleges he was confined for 402

days, has not alleged such an unduly lengthy confinement. *Compare Shoats,* 213

F.3d at 144 (holding that "eight years in administrative custody, with no prospect

of immediate release in the near future, is "atypical" in relation to the ordinary

incidents of prison life, and that Shoats' eight-year confinement subjects him to

conditions that differ significantly from "routine" prison conditions in

Pennsylvania state institutions"), *with Griffin v. Vaughn,* 112 F.3d 703, 706 (3d

Cir. 1997)(holding that a Pennsylvania prisoner's confinement in administrative

custody for 15 months did not implicate a liberty interest).

Moreover, Singleton has not alleged that he was denied basic necessities or

otherwise subjected to atypical and significant hardships in relation to the ordinary

incidents of prison life while in administrative custody.  Being housed in restrictive

confinement is not an atypical and significant hardship in relation to the ordinary

incidents of prison life—it is the kind of thing a prisoner can expect in connection

with his incarceration. See *Spencer v. Kelchner*, No. 3:06-CV-1099, 2007 WL

88084, at *1 (M.D. Pa. Jan. 9, 2007) (dismissing due process claim of prisoner

confined in the Special Management Unit at SCI-Camp Hill); *Griffin*, 112 F.3d at

708 (finding no due process violation for confinement in administrative custody for

15 months and stating that "it is not extraordinary for inmates in a myriad of

circumstances to find themselves exposed to the conditions to which Griffin was

24

subjected" in administrative custody).  Further, being subject to some level of light

24-hours a day is not atypical in prison. *See Diaz v. Canino*, 502 F. App'x 214, 218

(3d Cir. 2012) (affirming the dismissal of a due process claim of a prisoner who

alleged, among other things, that he "was unable to sleep as a result of the lights

that remained turned on" and finding nothing in the complaint that would allow it

to infer that the conditions complained of were "atypical" of "the ordinary

incidents of prison life").  Accordingly, Singleton does not have a state-created

liberty interest protected by the Due Process Clause.[7]

Because Singleton had neither an independent due process liberty interest

nor a state-created liberty interest, his complaint fails to state a due process claim

upon which relief can be granted.

### D.  Leave to Amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must

permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).  The

court "must provide the plaintiff with this opportunity even if the plaintiff does not

---

[7]  Although Singleton relies on *Hewitt v. Helms*, 459 U.S. 460 (1983), to argue that
he had a state-created liberty interest with regard to his confinement, *Sandin*
abrogated the methodology of *Hewitt*. See *Wilkinson v. Austin*, 545 U.S. 209, 222
(2005) (stating that in *Sandin* it "abrogated the methodology of parsing the
language of particular regulations" found in *Hewitt*).

seek leave to amend." *Id.*  Here, Singleton was already granted leave to amend, and he failed to state a claim upon which relief can be granted based on his solitary confinement.  Granting Singleton further leave to amend would be futile.

## V. Recommendations.

Based on the foregoing, it is recommended that the Court grant in part and deny in part the defendants' motion (doc. 20) to dismiss the amended complaint.  It is recommended that the Court dismiss the claims based on Singleton being confined to solitary confinement, but because the record is not clear about whether Singleton's parole was revoked, it is recommended that at this time, the Court not dismiss the claim based on Singleton being confined without a final parole revocation hearing.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 4th day of August, 2016.


**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge