## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYRONE SINGLETON,** | : | **Civil No. 1:13-CV-2711** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **LAUREL HARRY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.   Introduction

This case, which was assigned to us in 2021 has a protracted procedural history. Indeed,  this lawsuit has been pending before various judges in this court and in the court of appeals for nearly a decade. Given the extended duration of this case, it may seem unusual that the issue of the defendants' personal involvement has become the subject of a summary judgment motion in 2022, some nine years after this lawsuit was first filed. Nonetheless, we are now presented with this threshold question through a motion for summary judgment filed by the remaining defendants.

By way of background this is a prisoner civil rights case filed by the plaintiff, Tyrone Singleton, a former pretrial detainee who was temporarily detained at the State Correctional Institution at Camp Hill in the Pennsylvania Department of Corrections ("DOC"). Singleton filed this suit in 2013, alleging that he was confined

in administrative segregation for over one year without explanation and without a hearing in violation of the Fourteenth Amendment to the United States Constitution. (Doc. 1).

Pending before the court is the remaining defendants' third motion for summary judgment. (Doc. 119). The remaining defendants—Laurel Harry, the Superintendent of SCI Camp Hill, and Lisa Peters, a retired supervisor with the Pennsylvania Board of Probation and Parole—assert that Singleton's claim against them fail because neither defendant was personally involved in the alleged constitutional violation. For the following reasons, we will grant summary judgment in favor of Defendant Peters, as we find that the plaintiff has not established that she was personally involved in the alleged denial of his due process rights. However, with respect to Defendant Harry, we find that summary judgment would be inappropriate given the factual disputes that remain with respect to Singleton's confinement in administrative custody and Defendant Harry's Knowledge, acquiescence and involvement in this confinement. Accordingly, for the reasons that follow, the defendants' motion will be granted in part and denied in part.

## II.   <u>Statement of Facts and of the Case</u>[1]

In this case, we certainly do not write upon a blank slate. Tyrone Singleton filed the instant suit against the defendants in November of 2013, alleging a violation of his right to procedural due process when he was confined in administrative custody for roughly 14 months without a hearing. In December of 2012, Singleton reported to Pennsylvania parole authorities after he tested positive for THC and had picked up charges for DUI, which were violations of his parole in New York. He was taken into DOC custody in January of 2013 and placed in administrative custody. For their part, the defendants assert that inmates who are in DOC custody and detained temporarily are routinely placed in administrative custody for the safety of the institution, given that DOC staff do not have as much information about the temporary detainee as they would a permanent inmate. These inmates are put into a Control Group, which has less privileges than general population inmates but somewhat more privileges than inmates in disciplinary custody.

Singleton immediately began writing to staff and inquiring about his placement in administrative segregation. Thus, in February of 2013, Singleton wrote an Inmate Request to Staff Member to Laurel Harry, the Superintendent of SCI Camp Hill, in which he informed her of his circumstances as a temporary detainee

---

[1] The factual background of this Memorandum Opinion is taken from the parties' submissions to the extent those submissions are supported by the record. (Docs. 119-122, 125-129).

and requested information about the detainer that he was being held on. (Doc. 122-12, at 2). Singleton also filed an Official Inmate Grievance requesting information regarding his confinement, to which he received a response indicating that he was being held at SCI Camp Hill as a parole violator from New York and because he had pending charges in Pennsylvania. (Doc. 122-13, at 4). He was informed that unless he made bail on his Pennsylvania charges or authorities from New York took custody of him, he would remain in DOC custody. (Id.) The official who answered Singleton's grievance, who is not a named defendant, further responded that she did not have any information on his current housing assignment. (Id.) Singleton appealed the denial of his grievance, and Defendant Harry upheld the response as the Facility Manager, stating that "while it may not be to [his] liking," Singleton was "in an appropriate housing unit." (Id., at 8).

A month later, on March 21, 2013, Singleton wrote an Inmate Request to Staff Member to Mr. Whalen, his unit manager and a defendant who has been dismissed from this case. (Id., at 12). Singleton requested a copy of the New York detainer that he was being held on, and Whalen informed him that there were no detainers that had been lodged against him. (Id.) The following day, Singleton wrote another request to a Ms. Leonard asking why he was still being held, as there were no

detainers lodged against him and he had made bail on his Pennsylvania charges.[2] (Id., at 11). Ms. Leonard responded that he was being held on his out-of-state parole violation charges. (Id.)

Thus, it appears that there was either a miscommunication or a material misunderstanding of Singleton's status as a DOC detainee, as Singleton was told by one DOC official that there was no detainer lodged against him by New York and was told by another that he was being held as an out-of-state detainee. Notwithstanding this confusion, Singleton was told by Harry that "while it may not be to [his] liking, [he was] in an appropriate housing unit." (Doc. 122-13, at 8). However, and significantly, it is unclear whether, other than the response to his grievances informing Singleton that he was being held for his parole violation and pending Pennsylvania charges, Singleton was informed as to why he was placed specifically in administrative custody, and further, whether he was given an opportunity to challenge the determination.[3] Ultimately, after 402 days, Singleton was transferred from SCI Camp Hill and DOC custody to New York on February 14, 2014. He was released on parole in New York on March 14, 2014.

---

[2] Although Singleton's bail was initially set at $25,000.00, it was later reduced to nominal bail of $1.00. (See Doc. 66, ¶ 42).

[3] Indeed, as Magistrate Judge Schwab previously noted, "contrary to the defendants' assertion, the grievance process did not provide Singleton an explanation for why he was being held in the SMU." (Doc. 70, at 40).

As we have noted, we do not write on a blank slate in the instant case. Rather, the defendants filed a motion to dismiss Singleton's initial complaint, which was granted without prejudice to Singleton filing an amended complaint. (Docs. 17, 18). Singleton, at that time proceeding *pro se*, subsequently filed an amended complaint, which is now the operative pleading. (Doc. 19). The defendants then moved to dismiss the amended complaint, and the motion was granted as to the Eighth Amendment claim lodged in the amended complaint but denied as to the due process claim regarding Singleton's placement in administrative segregation. (Doc. 32).

Following the denial of the motion to dismiss, the defendants then filed a motion for summary judgment. (Doc. 33). That motion was granted, and Singleton appealed to the United States Court of Appeals for the Third Circuit. The Court of Appeals upheld the District Court's decision to grant summary judgment with respect to Singleton's claims regarding his parole revocation and sentencing but remanded the case with respect to the Fourteenth Amendment procedural due process claim. Singleton v. Superintendent Camp Hill SCI, 747 F. App'x 89 (3d Cir. Aug. 27, 2018). In its decision, the Third Circuit classified Singleton as a pretrial detainee, and remanded the matter with instructions "to consider the issue in the first instance by examining the asserted purposes for [Singleton's] detention, and determining whether sufficient process has been afforded." Id., at 93 (internal quotations and citations omitted).

On remand, Magistrate Judge Schwab ordered the parties to brief the issue of whether Singleton's detention in administrative custody violated his due process rights. (Doc. 51). Following briefing on the issue, the Court denied the defendants' motion to dismiss the due process claim. (Docs. 61, 62). However, the parties were permitted to engage in expedited discovery regarding Singleton's exhaustion of his administrative remedies. (Id.) The defendants then filed a second motion for summary judgment, arguing that the plaintiff had not exhausted administrative remedies, that Defendant Whalen had no personal involvement in the alleged constitutional violation, and that the due process claim failed on its merits. The court granted the defendants' motion as to Defendant Whalen, finding that he had no personal involvement in the alleged constitutional violation, but denied the motion in all other respects. (Docs. 70, 73).

The parties ultimately consented to magistrate judge jurisdiction, and the case was assigned to the undersigned on May 19, 2021. We then appointed counsel for the plaintiff in anticipation of trial and set a revised case management schedule. (Doc. 95, 101). The parties initially engaged in mediation efforts, which were ultimately unsuccessful, and thereafter the remaining defendants filed the instant motion for summary judgment. (Doc. 119).

In the instant motion, Defendants Harry and Peters raise a single issue with respect to the plaintiff's due process claim—that neither defendant was personally

involved in the alleged constitutional violation, and thus, Singleton's procedural due process claim against them fails as a matter of law. For his part, the plaintiff asserts that the defendants had personal knowledge of his administrative custody status and the fact that he had not had an opportunity to challenge it, and thus, deprived him of procedural due process.

After consideration of the record, we find that the plaintiff has not shown that Defendant Peters was personally involved in the alleged deprivation of his due process rights, and thus, the motion will be granted with respect to Defendant Peters. However, with respect to Defendant Harry, unresolved factual questions preclude summary judgment.  While seems clear from the record Harry had some knowledge that Singleton was being detained in administrative custody, and further, had knowledge of his complaints that he was being wrongfully housed in administrative custody, there is a factual dispute as to whether Defendant Harry was personally involved in any denial of Singleton's due process rights in this setting. Therefore, we will deny summary judgment as to this defendant.

## III.   Discussion

### A. Motion for Summary Judgment – Standard of Review

The remaining defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that

9

party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. <u>Celotex</u>, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. <u>Anderson</u>, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. <u>Id.</u>, at 252; <u>see also</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." <u>A.W. v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." <u>Countryside Oil Co., Inc. v. Travelers Ins. Co.</u>, 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." <u>Thimons v. PNC Bank, NA</u>, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." <u>Fireman's Ins. Co. of Newark New Jersey v. DuFresne</u>, 676 F.2d 965, 968 (3d Cir. 1982); <u>see</u> <u>Sunshine Books, Ltd. v. Temple University</u>, 697

10

F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Id. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Anderson, 477 U.S. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant.

> In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

In this case, we are presented with cross motions for summary judgment. In this setting:

> "When confronted with cross-motions for summary judgment ... 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.' " Transguard Ins. Co. of Am., Inc. v. Hinchey, 464 F.Supp.2d 425, 430 (M.D. Pa. 2006) (quoting Marciniak v. Prudential Fin. Ins. Co. of Am., 184 Fed.Appx. 266, 270 (3d Cir. 2006)). "If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts." Id. (citing Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998)).

Pellicano v. Office of Pers. Mgmt., Ins. Operations, 8 F. Supp. 3d 618, 625–26 (M.D. Pa. 2014), aff'd sub nom. Pellicano v. Office of Pers. Mgmt., 714 F. App'x 162 (3d Cir. 2017).

**B. The Defendants' Motion for Summary Judgment will be Granted in Part and Denied in Part.**

As we have explained, Singleton's sole claim alleges that he was denied due process when he was confined to administrative segregation for roughly 14 months without an explanation or opportunity to dispute the decision. The remaining two defendants raise a single issue in their motion for summary judgment – that they were not personally involved in the alleged due process violation. As to Defendant Peters, we agree that there is no evidence which could create a genuine dispute of fact as to her non-involvement in the alleged wrong. However, with respect to Defendant Harry, while this case presents a close question on a somewhat murky record, we find that disputes of fact remain as to her knowledge, acquiescence or involvement in the alleged due process violation. Accordingly, we will grant summary judgment in favor of Defendant Peters but deny summary judgment as to Defendant Harry.

Singleton brings his due process claim pursuant to 42 U.S.C. § 1983, alleging a violation of his due process rights. On this score, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v. Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction

or of actual knowledge and acquiescence in the challenged practice. <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286 (3d Cir. 1997). In particular, with respect to prison supervisors it is well established that "[an individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior.* Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005) (quoting <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988)).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.* ... <u>See</u> <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); <u>see also</u> <u>Dunlop v. Munroe</u>, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); <u>Robertson v. Sichel</u>, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009).

As for the substance of his claim, Singleton alleges a violation of the Fourteenth Amendment's due process clause, claiming that he was held in

administrative segregation for more than one year without an explanation or an opportunity to dispute the determination. On this score, Magistrate Judge Schwab found that Singleton was entitled to due process as a pretrial detainee housed in administrative custody in the DOC: "[A] pretrial detainee, like Singleton, transferred to restricted housing for administrative reasons is entitled to minimal due process in the nature of an explanation of the reasons for the transfer as well as an opportunity to respond to those reasons." (Doc. 70, at 38-39). This determination constitutes the law of the case and the defendants have not presented evidence showing that this minimal due process was ever provided to Singleton during the 14 months of his confinement. [4]

Given the law of the case, the question then becomes whether there is a factual dispute concerning the involvement of either Defendant Harry or Defendant Peters in this due process infraction. Here, with respect to Defendant Peters, we cannot conclude that Singleton has shown the requisite personal involvement for purposes of § 1983. Singleton simply alleges that he wrote an Inmate Request to Staff Member to Peters requesting a copy of the detainer lodged against him and an explanation of why he was in administrative custody. However, while there are several documents

---

[4] The law of the case doctrine dictates that "once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances." Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 165 (3d Cir. 1981) (internal citations and quotations omitted). Here, we have not found, nor do the defendants argue that there are unusual circumstances present which would allow them to relitigate this issue.

relating to inmate requests and inmate grievances, the record does not contain this Inmate Request to Staff Member written to Ms. Peters. It is well settled that at the summary judgment stage, the plaintiff is not entitled to rely solely on the allegations lodged in his complaint. See Shah v. Bank of Am., 346 F. App'x 831, 833 (3d Cir. 2009) ("To survive a motion for summary judgment, the plaintiff cannot rely on unsupported allegations in the complaint"); Graudins v. Retro Fitness, LLCGraudins v. Retro Fitness, LLC, 921 F.Supp.2d 456, 463 (E.D. Pa. 2013).

Thus, as we have noted, there is no evidence of any written request to Peters from Singleton requesting information about his confinement, nor is there any evidence that Peters was aware that Singleton was questioning his confinement in administrative segregation. Moreover, Peters submitted a declaration in which she states that as a parole supervisor, she was not responsible for inmate housing assignments or placing inmates in certain housing assignments. Therefore, the undisputed evidence shows that Peters was not responsible for Singleton's placement in restricted housing. Accordingly, given that there is no evidence in the record from which a factfinder could conclude that Peters was personally involved in the alleged due process violation, summary judgment will be granted in favor of Defendant Peters.

With respect to Defendant Harry, however, we find that there is evidence from which a trier of fact could conclude that Harry had knowledge of the alleged due

process violation and acquiesced in it. We do so while noting that the evidence in this longstanding case is, at best, fragmentary. However, the record contains a Request to Staff Member from Singleton to Defendant Harry in February of 2013 informing Harry that Singleton was a detainee in SCI Camp Hill based on a parole violation from New York and requesting paperwork regarding his continued detention in SCI Camp Hill. (Doc. 122-12, at 2). Construed in a light most favorable to Singleton, the request put Harry on notice of Singleton's plight, and alerted him that his minimal due process entitlement to an explanation and opportunity to address his housing status had not been met. The record also contains an April 2013 response to a grievance filed by Singleton, in which Harry informed Singleton that "[w]hile it may not be to [his] liking, [he was] in an appropriate housing unit." (Doc. 122-13, at 8). Once again, construed in a light most favorable to Singleton, this response is not fully responsive to Singleton's concerns. Thus, there is evidence in the record that shows Harry's personal involvement at some level with respect to purposes of Singleton's due process claim. Further, as Judge Schwab previously found, the responses provided to Singleton in his grievance do not explain the reasons for his confinement in administrative segregation, nor do they mention anything about the Control Group that DOC uses to house temporary prisoners. (Doc. 70, at 39-40).

While Defendant Harry has attested that, as a general matter, she relied upon other staff to inquire into and investigate inmate grievances, in this specific case we do not know what level of inquiry was undertaken of what that inquiry revealed. Instead, it simply appears that Singleton remains confined in restricted housing of a number of months before he was finally transferred to New York and then promptly paroled. Thus, on the record before us, viewed in a light most favorable to Singleton, there is a genuine dispute of material fact as to whether Singleton was provided with the requisite due process—an explanation of his confinement and an opportunity to challenge the decision. Further, there is evidence in the record from which a trier of fact could conclude that Defendant Harry had some level of personal involvement in the alleged due process violation, in that she had knowledge of the situation and acquiesced in it. Accordingly, we find that summary judgment would be inappropriate as to Defendant Harry.

## IV.   **Conclusion**

For the foregoing reasons, the defendants' motion for summary judgment (Doc. 119) will be GRANTED as to Defendant Peters but DENIED as to Defendant Harry. The parties shall prepare a joint case management plan proposing a trial schedule and notifying the court if the parties wish to pursue mediation.

An appropriate order follows.

18

Submitted this 10th day of January 2023.

_S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge