**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TYRONE SINGLETON,** | : | **Civil No. 1:13-CV-2711** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **LAUREL HARRY,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION AND ORDER

### I.   Factual Background

We now prepare to write the final chapter in this longstanding legal saga. In 2013, Tyrone Singleton, who was at one time incarcerated in the Pennsylvania Department of Corrections, filed this lawsuit against three defendants, individuals employed at the State Correctional Institution at Camp Hill and Pennsylvania State Parole. (Doc. 1). After nearly a decade of litigation, Singleton's sole remaining claim is a procedural due process claim against Laurel Harry, the Superintendent of SCI Camp Hill. (Doc. 138). In essence, Singleton claims that while he was a pretrial detainee at Camp Hill, he was placed in solitary confinement for 402 days without notice, an explanation, or an opportunity to challenge his placement in violation of the Fifth and Fourteenth Amendments' due process guarantees. This case has a

1

protracted procedural history which has entailed one prior appeal. Following the remand of this case by the court of appeals, Mr. Singleton's lawsuit was assigned to the undesigned. A jury trial in this case is scheduled to begin on May 22, 2023.

In anticipation of trial, the defendant has filed a motion *in limine*. (Doc. 130). The defendant's motion seeks to introduce at trial evidence that the plaintiff has a felony conviction; evidence that the plaintiff used multiple aliases; and evidence that Singleton was being held in DOC custody as a parole violator from New York. This *in limine* motion also seeks to preclude Singleton from introducing evidence regarding the conditions of his confinement in E Block, where he was housed at Camp Hill, as well as evidence concerning compensatory and punitive damages.

For the reasons set forth below, the motion will be granted in part, denied in part, and deferred in part as follows: (1) we will permit the defendant to introduce evidence of the fact that Singleton has a felony conviction without reference to the specific conviction or details of the underlying crime; (2) the defendant may produce evidence that Singleton was in DOC custody in a specific housing unit because of a parole detainer, but will not be permitted to refer to Singleton as a "parole violator," as the Third Circuit has determined that Singleton was a pretrial detainee at the time he was incarcerated; (3) the plaintiff will be permitted to introduce evidence with respect to his claim for compensatory damages; and (4) we will reserve rulings on

2

the relevance, probative value, and potential prejudice of the plaintiff's aliases, evidence of punitive damages, and evidence regarding Singleton's conditions of confinement in E Block until trial.

## II. <u>Discussion</u>

The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial. <u>See</u> <u>Luce v. United States</u>, 469 U.S. 38, 41 n.4 (1984); <u>In re Japanese Elec. Prods. Antitrust Litig.</u>, 723 F.2d 238, 260 (3d Cir. 1983), <u>rev'd on other grounds sub nom.</u>, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986) (the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. <u>United States v. Romano</u>, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." <u>Bradley v. Pittsburgh Bd. of Educ.</u>, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). However, courts should be careful before doing so.

In considering motions *in limine*, which call upon the Court to engage in preliminary evidentiary rulings, we begin by recognizing that these "evidentiary rulings [on motions *in limine*] are subject to the trial judge's discretion and are

therefore reviewed only for abuse of discretion . . . Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.'" Abrams v. Lightolier Inc. 50 F.3d 1204, 1213 (3d Cir. 1995) (citations omitted); see Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994) (reviewing *in limine* rulings for abuse of discretion). Yet, while these decisions regarding the exclusion of evidence rest in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion, the exercise of that discretion is guided by certain basic principles.

One of the key guiding principles is reflected in the philosophy which shapes the rules of evidence. The Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact finders to consider pertinent factual information while searching for the truth. The inclusionary quality of the rules is embodied in three cardinal concepts. The first of these concepts is Rule 401's definition of relevant evidence. Rule 401 defines what is relevant in an expansive fashion, stating, "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Adopting this view of relevance, it has been held that:

Under [Rule] 401, evidence is relevant if it has "any tendency to make

4

the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." [Therefore] "[i]t follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant."

Frank v. County of Hudson, 924 F.Supp. 620, 626 (D.N.J. 1996) (citing Spain v. Gallegos, 26 F.3d 439, 452 (3d Cir.1994)) (quotations omitted).

This quality of inclusion embraced by the Federal Rules of Evidence is further buttressed by Rule 402, which generally defines the admissibility of relevant evidence in sweeping terms, providing that, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed. R. Evid. 402.

Thus, Rule 402 expressly provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." United States v. Sriyuth, 98 F.3d 739, 745 (3d Cir.1996) (citations omitted). These principles favoring inclusion of evidence are, however, tempered by specific rules which deem certain classes of evidence inadmissible. While these principles favoring inclusion of evidence are subject to some reasonable limitations, even those limitations are

cast in terms that clearly favor admission of relevant evidence over preclusion of proof in federal proceedings. Thus, Rule 403, which provides grounds for exclusion of some evidence, describes these grounds for exclusion as an exception to the general rule favoring admission of relevant evidence, stating that:

> Although relevant, evidence may be excluded if its probative value **is substantially outweighed** by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403 (emphasis added).

By permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, Rule 403 underscores the principle that, while evidentiary rulings rest in the sound discretion of the court, that discretion should consistently be exercised in a fashion which resolves all doubts in favor of the admission of relevant proof in a proceeding, unless the relevance of that proof is substantially outweighed by some other factors which caution against admission.

These broad principles favoring the admission of relevant evidence also shape and define the scope of this Court's discretion in addressing motions *in limine* like those filed by the parties here, which seek a pre-trial ruling excluding a considerable range of evidence largely on relevance and prejudice grounds. In the past the United

States Court of Appeals for the Third Circuit has cautioned against such preliminary and wholesale exclusion of evidence, noting that it has "made clear that rulings excluding evidence on Rule 403 grounds should rarely be made *in limine.*" Walden v. Georgia–Pacific Corp., 126 F.3d 506, 518 n. 10 (3d Cir. 1997). The reason for this caution is evident: oftentimes a court "cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." Id.; see also In re Diet Drugs Products Liability Litigation, 369 F.3d 293, 314 (3d Cir. 2004). As the Court of Appeals has observed when advising against excessive reliance on motions *in limine* to exclude evidence under Rule 403:

> [M]otions *in limine* often present issues for which final decision is best reserved for a specific trial situation. American Home, 753 F.2d at 324; cf. Luce v. United States, 469 U.S. 38, 41–42, 105 S.Ct. 460, 463–64, 83 L.Ed.2d 443 (1984) (holding that criminal defendant must testify to preserve claim of improper impeachment with prior conviction) ("The [*in limine*] ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). This is particularly true when the evidence is challenged as irrelevant or prejudicial; the considerations weighed by the court will likely change as the trial progresses. See Rosenfeld v. Basquiat, 78 F.3d 84, 91 (2d Cir. 1996) ("Unlike rulings that involve balancing potential prejudice against probative value, the ruling in the present case was not fact-bound and no real purpose other than form would have been served by a later

Case 1:13-cv-02711-MCC   Document 142   Filed 03/20/23   Page 8 of 20

objection."). We have also made clear that rulings excluding evidence on Rule 403 grounds should rarely be made *in limine*. "[A ] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence. We believe that Rule 403 is a trial-oriented rule. Precipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are therefore unfair and improper." Paoli I, 916 F.2d at 859; see also In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 747 (3d Cir.1994) ("Paoli II"). Under these and similar circumstances, if a district court makes a tentative pre-trial ruling, it has the opportunity to "reconsider [its] in limine ruling with the benefit of having been witness to the unfolding events at trial." United States v. Graves, 5 F.3d 1546, 1552 (5th Cir. 1993).

Walden, 126 F.3d at 518 n. 10.

The Third Circuit has thus cautioned that "pretrial Rule 403 exclusions should rarely be granted. . . . Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage*."*    In re Paoli R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir. 1990); see also Spain v. Gallegos, 26 F.3d 439, 453 (3d Cir. 1994) (noting that the Third Circuit's "cautious approach to Rule 403 exclusions at the pretrial stage . . . .").    Moreover, the Third Circuit has characterized Rule 403 as a "trial-oriented rule" such that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are . . . unfair and improper." In re Paoli R. Yard PCB Litig., 916 F.2d at 859.

These legal tenets guide us in our consideration of the instant motion *in limine*.

## A. <u>The Defendant will be Permitted to Introduce Evidence of the Fact of Singleton's Conviction, as well as Evidence of His Parole Detainer.</u>

The defendant's first *in limine* requests that Defendant Harry be permitted to introduce evidence of the fact that Singleton has a felony conviction, and that he was being housed at SCI Camp Hill as a parole violator with local charges. Regarding Singleton's felony conviction, the defendant has made it clear that she only intends to introduce evidence that Singleton had a felony conviction rather than evidence of a specific felony. More specifically, the defendant asserts that she is referring to the felony for which Singleton was serving a sentence at the time he had a parole detainer lodged against him, which resulted in his incarceration at SCI Camp Hill.

Federal Rule of Evidence 609(a) allows for the introduction of evidence of a party's or witness's convictions for prior felonies in order to attack the truthfulness of the party or witness. Specifically, Rule 609(a) provides that a witness's prior criminal conviction may be introduced for purposes of impeachment "if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, Fed. R. Evid. 609(a)(1), or if the "crime required proof or admission of an act of dishonesty or false statements," Fed. R. Evid. 609(a)(2). The admission of such impeachment evidence is generally limited to convictions that occurred within the previous ten years unless the court concludes

that the probative value of an older conviction, as "supported by specific facts and circumstances" surrounding the case, "substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b).

Rule 609(a) makes clear that evidence of felony convictions is indeed relevant to a jury's effective evaluation of witness credibility. Rule 609(a) states that the evidence of a witness's felony conviction "shall be admitted" except for those instances where Rule 403 or the time limit of Rule 609(b) demands otherwise. Rule 609 is based upon the "common sense proposition" that an individual who has "transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath." See Walden v. Georgia–Pacific Corp., 126 F.3d 506, 523 (3d Cir. 1997). Its purpose is to aid the jury in assessing the credibility of a witness. Id.

Here, we find that permitting evidence of the fact of Singleton's felony conviction would not be prejudicial given the nature and circumstances of the case. Indeed, the jury will know that Singleton was incarcerated at SCI Camp Hill due to the nature of his allegations against Defendant Harry. Moreover, as we have noted, the defendant does not intend to offer evidence of the details of the underlying crime or the specific felony of which Singleton was convicted. Accordingly, we conclude that the defendant may introduce evidence at trial of the fact of Singleton's felony

conviction without reference to the specific felony or details of the crime. See White
v. Wireman, 500 F.Supp.3d 327, 332-33 (M.D. Pa. 2020) (permitting the defendant
to introduce evidence of a felony conviction without referencing the type of felony
conviction or details of the underlying crime).

We also find that the defendant may be permitted to introduce evidence of
Singleton's parole detainer, but we will limit this evidence solely to the fact that
Singleton was housed at Camp Hill in a specific housing unit under a parole detainer.
The defendant intends to introduce evidence of Singleton's parole detainer to show
that he was placed in E Block in the Control Group because of his status as a parole
violator with new local charges. While we find that Singleton's status may be
relevant to the defendant's case, in that it explains why the plaintiff was housed at
Camp Hill and why he was placed in a specific housing unit, we will permit reference
to Singleton's parole detainer in a narrower fashion than offered by the defendant.
Thus, the defendant will be permitted to reference the fact that the plaintiff was
housed at SCI Camp Hill and placed on a specific block because of his parole
detainer but will be prohibited from referring to the plaintiff as a "parole violator"
or referencing his local charges. Limiting the evidence in this narrower fashion will
reduce the potential unfair prejudice to the plaintiff that could stem from references
to his local charges. Furthermore, in order to ensure an informed understanding of

the purpose for any reference to the parole detainer at trial defense counsel should provide an offer of proof outside the presence of the jury before foraying into this topic.

Further, to the extent the defendant intends to offer this evidence to support its defense that no process was due given that Singleton was a parole violator rather than a pretrial detainee, we remind the defendant that the Third Circuit has already found that "Singleton was in custody pursuant to his subsequent Pennsylvania charges, not as a violator of his New York probation." Singleton v. Supt. Camp Hill SCI, 747 F. App'x 89, 93 (3d Cir. Aug. 27, 2018). In our view this decision by the court of appeals is the law of the case. Indeed, in denying the defendant's motion for summary judgment as to Defendant Harry, we recognized that Singleton's due process claim stems from the fact that he was a pretrial detainee while housed at Camp Hill. Accordingly, the defendant's argument on that score is now moot, and this evidence will be permitted in the limited fashion we have described above.

## B. **Singleton will be Permitted to Introduce Evidence Regarding Compensatory Damages.**

The defendant also argues that Singleton should be prohibited from introducing evidence of compensatory damages at trial. Defendant Harry asserts that Singleton's claim essentially arises out of his transfer to a new housing unit due to

12

his parole detainer, and that Singleton has not alleged any injury arising out of the transfer that would support a claim for compensatory damages. However, we do not read Singleton's claim so narrowly, and we will permit the plaintiff to introduce evidence at trial to support his claim for compensatory damages.

Singleton's sole remaining claim is one of a violation of due process under the Fifth and Fourteenth Amendments. Singleton claims that he was denied due process when he was confined in E Block in administrative segregation for 402 days without notice or explanation or an opportunity to challenge his confinement, and that as a result, he endured pain, suffering, and emotional distress. On this score, "[t]he law is settled that a court may award compensatory damages in a § 1983 civil rights action for the denial of due process." Isbell v. Bellino, 2015 WL 3838061, at *5 (M.D. Pa. June 19, 2015) (citing Carey v. Piphus, 443 U.S. 247 (1978)). It is further well settled that a plaintiff alleging distress caused by a deprivation of due process must show that the injury he claims is "attributable to the denial of procedural due process and not the underlying deprivation." Id. (citing Carey, 425 U.S. at 259).

Here, Singleton claims that being held in administrative segregation for 402 days without any notice or opportunity to challenge his confinement caused him pain, suffering, and emotional distress. Indeed, the amended complaint asserts that

Defendant Harry allowed Singleton to remain in administrative custody for 402 days without any process. Thus, we do not read Singleton's claim as only encompassing his transfer to E Block, as the defendant does. Rather, Singleton's claim encompasses the alleged emotional distress, pain, and suffering he asserts from remaining in administrative custody without an explanation or opportunity to challenge his confinement. Accordingly, we will permit Singleton to introduce evidence regarding his alleged compensatory damages stemming from the alleged denial of due process.

### C. **We will Defer Ruling on the Remaining *In Limine* Issues Until Trial.**

Finally, the defendant seeks to introduce evidence of the plaintiff's aliases at trial, as well as to prohibit the plaintiff from introducing evidence of punitive damages and of the conditions of E Block, where Singleton was housed at SCI Camp Hill for 402 days.

With respect to these *in limine* requests, the parties dispute the relevancy of this evidence. On this score, we are reminded that "*pretrial* Rule 403 exclusions should rarely be granted. . . . [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." In re Paoli R.R. Yard PDB Litig., 916 F.2d 829, 859 (3d Cir. 1990) (emphasis in original); see e.g., Vanderhoff v. City of Nanticoke, 2021

14

WL 4975080, at *5 (M.D. Pa. Oct. 26, 2021) (deferring a ruling on a motion *in limine* to preclude evidence because "the context of trial will provide more clarity on the questions of relevancy, potential prejudice, and the purpose for which evidence is offered"); Crestwood Membranes, Inc. v. Constant Servs., Inc., 2018 WL 493257, at *3 (M.D. Pa. Jan. 19, 2018) (same).

As it pertains to the plaintiff's aliases, we cannot make a pretrial determination at this juncture regarding the relevance of Singleton's aliases. While we recognize that some courts in this circuit have found that this kind of evidence is admissible under Rule 608 as being probative of a party's truthfulness or untruthfulness, see e.g., Moore v. Granlund, 2020 WL 1285329, at *2-3 (M.D. Pa. Mar. 18, 2020), we will ultimately defer ruling on the inclusion of this evidence until trial where we can make a more fully informed judgment on questions of relevance, potential prejudice, and the purpose for which the evidence will be offered. See Godley v. Newark Police Dep't, 2007 WL 9782801, at *1 (D.N.J. Feb. 13, 2007) (deferring a ruling on the admissibility of reference to the plaintiff's aliases until trial).

We reach a similar conclusion with respect to the defendant's request to prohibit the plaintiff from offering evidence concerning punitive damages. In addressing this *in limine* request, we acknowledge that evaluation of a punitive damages claim entails a very fact-specific assessment cast against an exacting

burden of proof. While that exacting burden of proof may invite challenges to such claims, those challenges often are not amenable to pretrial resolution but rather must await presentation of proof at trial. Therefore, courts frequently decline to grant such motions *in limine*, without prejudice to renewal of objections to punitive damages claims at trial based upon a fully developed factual record. See e.g., Botey v. Green, No. 3:12-CV-1520, 2017 WL 2536397, at *2 (M.D. Pa. June 9, 2017) ("In sum, Defendants ask this Court to make a determination prior to trial that no basis for the award of punitive damages exists and that, consequently, no reference by Plaintiff's counsel in his opening statement may be made to punitive damages. This the Court will not do."); Ponzini v. PrimeCare Med., Inc., 269 F. Supp. 3d 444, 540 (M.D. Pa. 2017), appeal dismissed sub nom. Ponzini v. Monroe Cty., No. 17-3134, 2017 WL 8727421 (3d Cir. Dec. 19, 2017); Bailey v. B.S. Quarries, Inc., No. 3:13CV3006, 2016 WL 3411639, at *3 (M.D. Pa. June 16, 2016); Grosek v. Panther Transp., Inc., No. 3:07CV1592, 2009 WL 905035, at *3 (M.D. Pa. Apr. 1, 2009); Brillhart v. Sharp, No. 4:07-CV-1121, 2008 WL 11501565, at *1 (M.D. Pa. Nov. 17, 2008).

Thus, while the defendant contends that there is no evidence that Defendant Harry was involved in the alleged denial of due process, and thus, Singleton should not be permitted to introduce evidence of punitive damages, we found at the summary judgment stage that a trier of fact could conclude that Harry was involved

16

in some way in the alleged denial of due process since she advised Singleton that she had looked into the question of his continued custody and had determined he was properly detained. Accordingly, we will deny the defendant's *in limine* request to preclude evidence of punitive damages, and instead we will await the presentation of proof at the trial and will make a fully informed decision regarding whether this claim may go to the jury based upon the evidence and guided by the arguments of counsel.

Finally, with respect to the defendant's request to preclude Singleton from introducing evidence of the conditions of E Block, we will similarly deny this pretrial request to wholly preclude this evidence. As we have explained, Singleton's due process claim asserts that he endured pain, suffering, and emotional distress as a result of being confined in administrative segregation for 402 days without any explanation or opportunity to challenge his confinement. Thus, the conditions in which Singleton was housed as a result of his inability to challenge his administrative confinement would appear to have some relevance, even if limited, to his due process claim. Accordingly, we will not decide at this juncture that Singleton is wholly precluded from presenting evidence regarding the conditions of E Block. Rather, as we have found with respect to Singleton's claims for punitive damages and the defendant's request to produce evidence of Singleton's aliases, we

17

will defer ruling on the exclusion of this evidence until trial where we can make a more fully informed judgment on questions of relevance, potential prejudice, and the purpose for which the evidence will be offered.

In sum, the defendant will be permitted to offer evidence at trial of the fact of Singleton's felony conviction without reference to the specific conviction or the underlying crime, as well as evidence and argument that Singleton was housed at SCI Camp Hill in a specific housing unit because of a parole detainer. The defendants will not be permitted to refer to Singleton as a "parole violator," as the Third Circuit has already held that Singleton was a pretrial detainee for purposes of his due process claim. Further, Singleton may produce evidence of compensatory damages at trial as it relates to his alleged injury caused by the lack of due process he received. We will defer rulings on all other *in limine* matters until trial, where we can make a more fully informed decision regarding whether the evidence is relevant and its probative value outweighs its potential prejudice.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYRONE SINGLETON,** | : | **Civil No. 1:13-CV-2711** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **LAUREL HARRY,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>ORDER</u>

For the reasons set forth in the accompanying Memorandum Opinion, with respect to the defendant's Motion *in Limine*, (Doc. 130), IT IS ORDERED that the motion is GRANTED in part, DENIED, in part, and DEFERRED in part as follows:

1. We will permit the defendant to introduce evidence of the fact that Singleton has a felony conviction without reference to the specific conviction or details of the underlying crime;

2. The defendant may produce evidence that Singleton was in DOC custody in a specific housing unit because of a parole detainer, but will not be permitted to refer to Singleton as a "parole violator," as the Third Circuit has determined that Singleton was a pretrial detainee at the time he was incarcerated;

3. The plaintiff will be permitted to introduce evidence with respect to his claim for compensatory damages; and

4. We will reserve rulings on the relevance, probative value, and potential prejudice of the plaintiff's aliases, evidence of punitive damages, and evidence regarding Singleton's conditions of confinement in E Block until trial.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: March 20, 2023